By his will, after giving several slaves to two of his daughters, with a direction that they should be estimated in the division of his personal estate, he proceeded as follows:
 "It is my will that my family live together, and that all the property not devised to remain on my plantation in the care of my beloved wife, Judith Ellis, to be managed to the best advantage until my son William Anderson shall arrive at full age, at which time I wish all my personal estate, consisting of negroes, horses, cattle, hogs, and sheep, farming utensils, and all other personal estate divided equally among the following legatees, to wit: my wife, Judith Ellis, Elizabeth Pearson, Maria Ellis, Lucy, John, Sarah, Mary, and William Anderson Ellis, so as to make them all equal in my personal estate, but if my wife should die before my son William Anderson arrives at full age, then the property to be divided as soon as can be.
 "I give to my sons John and William Anderson Ellis, on William Anderson arriving at full age, my tract of land which I purchased of Elizabeth M. Kelly, containing about 800 acres, to be equally divided between them both, to them and to their heirs forever, but should either of them die without issue, then the surviving brother to heir all the Kelly tract.
 "I give to my beloved wife, Judith Ellis, during her natural (21) life, one-third part of the tract of land whereon I now live, supposed to contain 565 acres, her part to include my mansion house, all other buildings, also the spring, also the following negroes, to wit, Dice, etc. It is my will that my executor sell the whole of my mill lands, supposed to contain 2,700 acres, on a credit for the best price that can be obtained, the money arising from said sale to be equally divided between my daughters Harriet Bradshaw, Elizabeth Pearson, Maria, Lucy, Sarah, and Mary; but if said land cannot be sold for something like a fair price, then my executor is to pay (as soon as it can be made by the crops which may hereafter be raised) to Elizabeth Pearson the sum of $2,000, which is to be in full of her part of the said land, and whenever said land can be sold, the proceeds thereof to be equally divided between my other daughters, to wit, Harriet Bradshaw, Maria, Lucy, Sarah, and Mary Ellis.
 "I will that my executor sell my tract of land whereon I now live, after the death of my wife, either privately or at public sale, for the highest price, the money arising from said sale to be equally divided between the following children, to wit, Elizabeth Pearson, Maria, Lucy, Sarah, and Mary Ellis."
The plaintiffs, one of whom was the daughter of the testator mentioned in the will as Harriet Bradshaw, contended that the testator died intestate as to two-thirds of the first mentioned tract of land, which *Page 24 
descended to his heirs until the death of his wife; that his heirs were entitled to a division thereof, and to immediate possession of two-thirds of it, and to an account of two-thirds of the rent and profits thereof since his death. They also contended that the second tract of land above mentioned descended to the heirs of the testator until William, the testator's youngest son, should attain his full age; and they prayed for an account of the rents and profits of that; and further they insisted that the growing crop upon the mill tract belonged to the heirs. They (22) alleged that the executor and the widow had received all the above mentioned rents, issues, and profits. The executor, the widow, and the other children of the testator were the defendants, and the only questions were as to the proper construction of the above recited clauses of the will.
After examining the whole will, we are of opinion that the testator did not mean by the words "my plantation" to confine the care of his wife only to the home tract of 565 acres; but that he designed to embrace under this designation the two tracts which he cultivated together as one farm. It seems to us that a chattel interest in the other two tracts of land passed to the widow, as trustee for the children named in the will, until William should come of age, or until the death of the widow, if that event should happen before William came of age. That this construction is right is fortified by the fact that the testator, when devising his lands in other parts of his will, does not make use of the word "plantation," but he uses the words "tract of land."
Again, he devises his Kelly tract of land to his two sons, John and William, on William's attaining full age, showing his intention that is (the Kelly tract) should go to some other person until that period arrived. If no other person could be designated, by implication plain in the will, to take, then the heirs at law would take. But the testator does say all the property no devised is to remain in the care of his wife to be managed by her until William shall come of age. If the words are not express, the implication is plain that the wife should take the Kelly tract. When William shall come of age the chattel interest of his mother (if she then be alive) will cease, and John and William will be entitled to the possession of the Kelly tract. The two tracts, viz., the home tract and the Kelly tract, pass to the widow under the words "my plantation."
The second question raised by the bill has been decided by the Court in giving the opinion on the first question. "I give to my sons, John and William A. Ellis, on William A. Ellis arriving at full age, my *Page 25 
tract of land which I purchased of Mrs. Kelly," etc. Does this (23) tract of land descend to the heirs at law until William arrives at age? We have before said that the widow has a chattel interest in this tract. If the widow should die before William comes of age, who would be entitled to take the Kelly tract from her death unto the time of William's coming of age is a question not necessary now to be answered. The heirs at law, as such, at present have no vested rights in this tract of land.
The third question submitted, Did the implements which were on the mill tract of land at the death of the testator go to the persons who were to have the proceeds of the sale of the said tract. The clause in the will is as follows: "It is my will that my executor sell the whole of my mill lands, on a credit, for the best price that can be obtained, the money arising from said sale to be equally divided between my daughters," etc. The mill tract is not devised to the daughters, nor to the executor to sell. The executor has only a naked power to sell and divide the money produced by the sale of the land, and not the crop growing on the land at the death of the testator. The mill land descended to the heirs at law subject to the power in the executor to sell. The emblements or lands which descend to the heir belong to the executor, and are personal assets. We therefore declare that no part of the emblements which were on the mill tract the year the testator died belong to the plaintiffs under this clause in the will. As to the remaining question which respects two-thirds of the home tract, if Mrs. Ellis shall be alive when William arrives at full age, then she by the will becomes entitled to but one-third of that tract of land for her life. The other two-thirds not having been disposed of by the will, then will go to the heirs at law until the death of the widow. On her death, the executor has a power to sell this tract and divide the money among the daughters mentioned. The plaintiffs at present are not entitled to any of the demands set forth in their bill. Therefore the bill must be
PER CURIAM. Dismissed.
Cited: Stowe v. Davis, 32 N.C. 434; Jones v. Norfleet,52 N.C. 476; Woods v. Woods, 55 N.C. 427; Rogers v. Brickhouse,58 N.C. 304; McLennon v. Chisholm, 66 N.C. 102; Harvey v. Harvey,72 N.C. 574; Edwards v. Tipton, 77 N.C. 226; Jones v. Robinson,78 N.C. 401; Grimes v. Bryan, 149 N.C. 251; Austin v. Austin,160 N.C. 369; Coltrain v. Lumber Co., 165 N.C. 45. *Page 26 
(24)